IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                             Case No. 20-10059-01-02-JWB

DANNY LEE BARKER and
VALERIE ANN BARKER,

        Defendants.

## MEMORANDUM AND ORDER

Defendants Danny Lee Barker and Valerie Ann Barker were each charged with four counts of mailing threatening communications in violation of 18 U.S.C. §§ 876(b) and 2. The case proceeded to trial before a jury from July 18 to July 22, 2022. The jury was unable to reach a verdict on Counts 1–3 and returned a guilty verdict on Count 4 for both Defendants. This matter is before the court on Defendants' pro se motions for judgment of acquittal. (Docs. 113, 114.) This court liberally construes Defendants' motions to include motions for new trial. The government opposes these motions. (Doc. 115.) Defendants also filed a reply to the government's response. (Doc. 116.) For the reasons that follow, the motion for acquittal and for new trial as to Valerie Ann Barker (Doc. 114) is DENIED, and the motion for acquittal as to Danny Lee Barker (Doc. 113) is GRANTED. In a conditional ruling pursuant to Rule 29(d)(1), the motion for new trial as to Danny Lee Barker (Doc. 113) is DENIED.

## I.    Facts and Procedural History

Originally, Defendants were indicted by a grand jury on September 9, 2020, with three counts of mailing threatening communications. (Doc. 1.) In sum, the charges and related materials

allege Defendants made a series of threats to arrest/kidnap a federal bankruptcy judge during bankruptcy proceedings to prevent foreclosure and sale of various pieces of property at issue in the underlying proceedings.   On April 19, 2022, Defendants were charged in a superseding indictment with four counts of mailing threatening communications in violation of 18 U.S.C. §§ 876(b) and 2.  (Doc. 68.)  The superseding indictment charged Defendants with the same three counts of mailing threatening communications as the original indictment, plus an additional fourth count of mailing threatening communications for a different alleged victim, T.G.  (*Id.*)

This case proceeded to trial in July 2022.  Defendants each represented themselves, with standby counsel assisting pursuant to parameters established by the court prior to trial.  At trial, the government introduced evidence showing that Defendants initiated bankruptcy proceedings in May 2019.  (Tr. at 154, 170.[1])  The bankruptcy trustee testified that he met Valerie Barker in person during the bankruptcy proceedings, but that he never saw or met Danny Barker.  (Tr. at 155–57.)  The bankruptcy judge testified that he never saw Defendants in person during the course of the bankruptcy proceedings.  (Tr. at 169.)

The government also entered as exhibits letters or pleadings sent by U.S. mail which contained alleged threats to the bankruptcy judge and the bankruptcy trustee who exerted control over Defendants' property.  (Exhs. 1, 2, 3, and 8;[2] Tr.  at 160–61, 171–72, 182–84.)  These letters included purported signatures for Danny and Valerie and were directed towards or related to Defendants' bankruptcy case.  (Exhs. 1, 2, 3, and 8.)  Some letters contained a return address for Valerie.  (Exhs. 1a, 3a, 4.)  FBI Special Agent Hendrickson testified that Valerie admitted writing the letters.  (Tr. at 207–208.)

---

[1] Citations to the transcript refer to Docs. 109–112, which are paginated consecutively.  Doc. 109 contains pages 1–224, Doc. 110 contains pages 225–346, Doc. 111 contains pages 347–376, and Doc. 112 contains pages 377–425.
[2] Citations to exhibits refer to exhibits admitted into evidence at trial.

As to Count 4, the government presented as a witness T.G., who purchased a residence at 1610 S. Shiloh in Wichita, KS at auction. (Tr. at 252.)  This residence was previously owned by Defendants.  (Tr. at 241.)  T.G. testified that he heard a female voice through a camera and speaker threatening to come in with a shotgun when he initially entered the home. (Tr. at 253.) He changed the locks and secured the doors with boards.  (Tr. at 254.)  The next day, he found that the home had been forced open, so he called the Wichita Police Department.  (Tr. at 254–55.)  The police arrived and removed a man and woman, identified as Defendants, from the home. (Tr. at 255.) During his testimony, T.G. misidentified Danny in the courtroom, pointing instead to a deputy United States Marshal.  (Tr. at 256.)

T.G. also testified that he received letters from Defendants at his home, and the government introduced one of those letters.  (Tr. at 257–59; Exh. 4.)  The letter's return address showed it was from Valerie. (Exh. 4.)  The letter contained several examples of threatening language. (Exh. 4.) T.G. testified that he purchased firearms and upgraded the surveillance system around his home after receiving the letter.  (Tr. at 263.)  Notably, Exhibit 4 did not contain a signature for Danny, as some of the other letters had.  (Exh. 4; Tr. at 262–63.)

After the government put on its case, Defendants both moved for acquittal. (Tr. at 271–72, 277–78.)  The court denied Valerie's motion at that time.  (Tr. at 278–79.)  The court reserved ruling on Danny's motion at that time and reiterated the same after the verdict was read.  (Tr. at 277–78, 422.)

## II.   Standard

Federal Rule of Criminal Procedure 29 allows a defendant to move for a judgment of acquittal "of any offense for which the evidence is insufficient to sustain a conviction."  Fed. R. Crim. Pro. 29(a).  The court may also reserve its decision on a motion for acquittal to decide after

3

the jury returns a verdict.  Fed. R. Crim. Pro. 29(b).  When reviewing the sufficiency of evidence to sustain a guilty verdict, the court asks whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Magallenez*, 408 F.3d 672, 681 (10th Cir. 2005) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).   The court may consider all direct and circumstantial evidence admitted at trial as well as all "reasonable inferences to be drawn therefrom." *United States v. Montgomery*, 468 F.3d 715, 719 (10th Cir. 2006) (quoting *United States v. Scull*, 321 F.3d 1270, 1282 (10th Cir. 2003)).  Substantial evidence must support the conviction, but "it need not conclusively exclude every other reasonable hypothesis and it need not negate all possibilities except guilt." *United States v. Vallejos*, 421 F.3d 1119, 1122 (10th Cir. 2005) (quoting *United States v. Johnson*, 42 F.4d 1312, 1319 (10th Cir. 1994)).

The court may grant a defendant a new trial "if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  Defendants have the burden of proving a new trial is necessary. *United States v. Walters*, 89 F. Supp. 2d 1206, 1213 (D. Kan. 2000).  A new trial should be granted if there is any error sufficient to require a reversal on appeal. *Id.*

Because Defendants are proceeding pro se, the court must liberally construe these motions. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).  However, liberally construing motions does not mean constructing a legal theory on Defendants' behalf. *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

## III.   Analysis

Here, the court will consider the evidence against Danny and Valerie individually to determine whether there is substantial evidence to support the conviction on Count 4 of the Superseding Indictment.  Additionally, because the court reserved ruling on Danny's motion for

acquittal before the jury returned its partial verdict, the court considers whether there is sufficient evidence to convict Danny on any of the counts in the Superseding Indictment.  Last, the court addresses the motions for new trial.

### A.  There is substantial evidence to support the conviction of Valerie Barker on Count 4.

Valerie seems to argue that she is entitled to a judgment of acquittal because: (1) the jury's verdict as to Count 4 was not unanimous; (2) the court erred in instructing the jury and was "coercive" towards the jury in providing a meal to jurors during deliberations; and (3) the government's witness T.G. was "indecisive" and "double-minded" and thus his testimony is insufficient to support a finding that Valerie threatened him through the mail.[3]  (Doc. 114.)

Valerie argues that the jury was unable to reach a unanimous verdict, but later concedes in the same motion that the jury reached a unanimous verdict on Count 4.  (Doc. 114.)  Further, Valerie again admits that the jury's verdict was unanimous as to Count 4 in her reply.  (Doc. 116.)  Because Valerie concedes that the jury's verdict as to Count 4 was unanimous, and because the jury's verdict on Count 4 was, in fact, unanimous, this argument is unavailing.

In a single sentence in her motion, Valerie notes that the jury reached a verdict on Count 4 "through coercive verbiage and instructions given by the court, along with a pizza party."  (Doc. 114.)  Valerie does not elaborate as to what the "coercive verbiage" was or explain what errors she believes the court made in instructing the jury.  (*Id.*)  While this court must liberally construe Valerie's motions as a pro se defendant, it is not the court's responsibility to make arguments for her.  *Whitney*, 113 F.3d at 1173–74 .  Because Valerie fails to explain the errors she alleges the

---

[3] To the extent Valerie makes additional arguments in her reply, this court need not consider those additional arguments.  *United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011) ("arguments raised for the first time in a reply brief are generally deemed waived.").

court made in its instructions, this argument fails.  It is also proper for the clerk to provide lunch to jurors during the jury's deliberations.

For her final argument, Valerie contends that the government's witness, T.G., was "double-minded" and "indecisive" and thus, his testimony is insufficient to support a conviction for Count 4.  (Doc. 114.)  The court disagrees.  T.G. testified that when he attempted to enter the residence that he purchased at auction, he heard a woman's voice, apparently from a speaker on a security camera, say "we're going to come there with a shotgun" to shoot him.  (Tr. at 253.)  He also testified that after he boarded up the home, he returned to find it had been broken into, and the police removed Defendants from the home.  (Tr. at 254–55.)

As to the letters, T.G. specifically testified about one letter he received at his home address, and that letter was entered by the government as Exhibit 4.  (Tr. at 257, 260; Exh. 4.)  The letter included a return address for Valerie and was also signed by her.  (Exh. 4)  The letter was strikingly similar to the other letters admitted into evidence.  (Exhs. 1, 2, 3, and 8.)  Further, Valerie admitted to FBI Special Agent Hendrickson that she wrote the letters.  (Tr. at 207–208.)

While Valerie attempts to attack T.G.'s testimony regarding whether he felt threatened, the relevant inquiry is whether the statements would cause apprehension in a reasonable person.  (Doc. 104, Instruction No. 11.)  T.G.'s testimony regarding whether he felt threatened was simply evidence the jury could consider in evaluating whether a reasonable person would also feel threatened.  T.G. testified that he purchased a firearm and installed surveillance around his home after receiving the letter.  (Tr. at 263.)  In short, there is sufficient evidence for a reasonable jury to find the elements of mailing threatening communications (Count 4) were proven beyond a reasonable doubt as to Valerie Barker.

**B. There is not substantial evidence to support the conviction of Danny Barker on any count.**

Danny Barker appears to argue that there was not substantial evidence to support his conviction on Count 4 of the Superseding Indictment because T.G. misidentified Danny in the courtroom and because T.G. did not seem "sure of anything in the case." (Doc. 113.) These arguments have no merit. However, for his Rule 29 motion at trial Danny argued that no evidence was entered to prove that any signatures on the documents were his authentic signature, or otherwise implicating him in any of the offenses. (Tr. at 277.) This argument does have merit, and it remains before the court because the court reserved ruling on this argument at trial. (Tr. at 277, 422.) The government argues that the misidentification was inconsequential, and that the government offered substantial evidence at trial to prove a joint scheme by the Barkers. (Doc. 115.) The court concludes that there is insufficient evidence to support a guilty verdict against Danny on any of the counts.

Danny correctly states that T.G. misidentified him during his testimony. (Tr. at 256.) Further, Valerie's name and not Danny's name appears on the return address for several of the letters. (Exhs. 1a, 3a, 4.) Valerie admitted to FBI Special Agent Hendrickson that she wrote the letters. (Tr. at 207–208.) Danny's signature does not appear on Exhibit 4. (Exh. 4.) The only evidence tying Danny to any of the letters is his purported signature, which appears on only some of the letters. (Exhs. 2, 3, 8.)

This court is not convinced that Danny's purported signature on some letters is sufficient to uphold his conviction. No evidence was presented that anyone ever saw Danny sign the letters or that he participated in the offenses. The bankruptcy trustee and the bankruptcy judge both testified that Danny never appeared in person for any proceedings in which the trustee or the judge was involved. (Tr. at 155–57, 169.) Other than the fact that Danny was mentioned in the allegedly

threatening letters, which may have been attributable to Valerie's drafting of those documents, the only evidence tying Danny to any of the letters was his purported signature thereon. And while it might have been easy enough for the government to introduce evidence showing known examplars of Danny's signature, no such comparison was ever done in court to establish that it was, in fact, Danny's signature. And given the considerable evidence that Valerie was the primary instigator of the alleged offenses, proof beyond a reasonable doubt required the government to address the possibility that Valerie signed for both herself and her husband. Under the circumstances, a jury could not reasonably conclude beyond a reasonable doubt that Danny signed the letters upon which his purported signature appears or otherwise participated in the charged offenses.

The government also suggests that Danny's presence in the residence that T.G. purchased at auction is evidence that he was a part of a joint scheme with Valerie. (Doc. 115.) But T.G. also testified that when he first entered the residence to take possession of it, he heard a female voice threatening him. (Tr. at 253.) From this evidence, a reasonable jury could infer that Valerie was the person threatening others. The fact that Danny was present in his former home on a different day thereafter, standing alone, cannot show beyond a reasonable doubt that he took an active part in the scheme. There is insufficient evidence to sustain Danny's conviction on Count 4. Moreover, lacking any other evidence of Danny's involvement, he is entitled to a judgment of acquittal on all counts.

### C. Defendants' motions for new trial are denied.

The court liberally construes Defendants' motions for acquittal (Docs. 113, 114) along with Defendants' reply to the government's response (Doc. 116) as motions for new trial because Defendants request to have the evidence re-evaluated. Defendants do not argue in detail why they are entitled to a new trial and point to no errors which would require a new trial. Defendants had

the opportunity to represent themselves in court and relied at times on the assistance of standby counsel.  Defendants had the opportunity to present evidence and to testify as to their version of events and chose not to do so.  Accordingly, because Defendants have not met their burden, and because the interests of justice do not require a new trial, Valerie's motion for new trial is denied, and Danny's motion is conditionally denied under Rule 29(d).  As to Danny, the sufficiency of the evidence presented at trial is a question of law.  The court concludes that the evidence is not sufficient to sustain a conviction against him on any of the counts.  If a reviewing court disagrees with that conclusion, it would seem that the remedy would be to reinstate the jury's verdict on Count 4 and allow the government to determine whether it will seek to try him again on the counts as to which the jury hung.

## IV.    Conclusion

For the foregoing reasons, Valerie Barker's motion for acquittal and motion for new trial (Doc. 114, 116) is DENIED.  Danny Barker's motion for acquittal (Doc. 113) is GRANTED.  In a conditional ruling, this court DENIES Danny Barker's motion for new trial.  (Docs. 113, 116.) IT IS SO ORDERED this 2nd day of September, 2022.


_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE